Michael Geraghty
DeLisio Moran Geraghty & Zobel, P.C.
943 W. 6th Avenue
Anchorage, AK  99501
Ph:  (907) 279-9574
Fax: (907) 276-4231
mgeraghy@dmgz.com

Parker C. Folse, III
Floyd G. Short
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Ph:  (206) 373-7381
Fax:  (206) 516-3883
fshort@susmangodfrey.com
pfolse@SusmanGodfrey.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| PETRO STAR INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BP OIL SUPPLY CO., BP PRODUCTS ) <br> NORTH AMERICA INC. ) <br> ) <br> Defendants ) <br> ) | Case No. 3:11-cv-00064 RRB |

**PETRO STAR INC.'S MOTION TO COMPEL DISCOVERY RESPONSES FROM
BP PRODUCTS NORTH AMERICA INC.
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37</u>**

PETRO STAR'S MOTION TO COMPEL
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 1 of 16

I.   Introduction

Petro Star brings this discovery motion before the Court with reluctance, but out of necessity. Three months after Petro Star served its first sets of interrogatories and requests for production, and after having conferred with counsel for Petro Star for nearly a month, BP has yet to provide any firm agreement to provide full and complete interrogatory responses. Nor has BP begun producing documents responsive to Petro Star's requests for production; indeed, BP has not even provided Petro Star with an estimate of when it will begin to do so. Because there are less than three months remaining for discovery under the case schedule, and because BP's dilatory conduct is prejudicing Petro Star, Petro Star respectfully requests the Court's intervention.

II.   Facts and Procedural History

This dispute arises out of a series of contracts between Petro Star and BP Oil Supply Co. (referred to herein, together with its successor-in-interest, BP Products North America, Inc., as "BP"). The contracts concern the sale and exchange of Alaska North Slope ("ANS") crude oil delivered to Petro Star's refineries on the Trans Alaskan Pipeline System ("TAPS"). Petro Star's First Amended Complaint ("FAC") (Dkt. No. 33) ¶ 6.

Beginning in 1991 and continuing until July 1, 2000, Petro Star purchased ANS crude oil from BP and took delivery of the oil at two points along TAPS for Petro Star's refineries in North Pole, Alaska, and Valdez, Alaska. *Id.* TAPS was owned in undivided joint interests by subsidiaries of most of the oil companies that produced ANS crude oil and shipped it via TAPS, including BP Pipelines (Alaska) Inc., one of the TAPS carriers. *Id.* ¶ 9. Upon receiving oil from BP at the two TAPS connections in North Pole and Valdez, Petro Star retained and purchased

PETRO STAR'S MOTION TO COMPEL                                                Page 1 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 2 of 16

some of the oil and exchanged the remainder that it returned to TAPS. *Id.* Petro Star's purchases and exchanges with BP were governed by seven contracts (collectively, the "BP-Petro Star Contracts"). *Id.*

Under the first of the BP-Petro Star Contracts (BP Contract 13297 & 14022) (the "1991 Contract"), BP arranged for transportation of the oil from Pump Station No. 1 on TAPS to the junction of TAPS and a pipeline in North Pole, Alaska, owned and operated by the Golden Valley Electric Association (the "GVEA pipeline"). The GVEA pipeline transported the ANS to Petro Star's North Pole refinery. *Id.* ¶ 7. BP was responsible for paying the TAPS carrier to transport ANS crude oil from Pump Station No. 1 to the junction of the TAPS and the GVEA pipeline for ultimate delivery to Petro Star's refinery. However, the 1991 Contract passed along the cost of that transportation to Petro Star through the pricing of the oil. *Id.* ¶ 11.

The pricing formula set forth in the 1991 Contract began with the price that BP charged for ANS crude oil delivered to the West Coast of the United States. Then the formula deducted the cost of transporting ANS from the Valdez Marine Terminal ("VMT"), located at the southern end of TAPS, to the West Coast. Next, the formula further deducted the "implied TAPS [] tariff differential" for transporting oil from the TAPS-GVEA junction to the VMT. *Id.* ¶ 12. The result of this formula was BP's price for the oil plus the cost of transporting the oil to the TAPS-GVEA pipeline. The additional BP-Petro Star contracts governing sale and delivery of oil to Petro Star's refineries functioned in the same way, passing along to Petro Star the applicable intrastate TAPS tariff rates for shipment of oil from Pump Station No. 1 to Petro Star's refineries in North Pole and Valdez. *Id.* ¶¶ 16-22.

PETRO STAR'S MOTION TO COMPEL  Page 2 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 3 of 16

Under the regulatory scheme established by the Alaska Pipeline Act, the TAPS carriers proposed intrastate tariff rates for 1997. *Id.* ¶ 23. Those rates were challenged, however, and the Regulatory Commission of Alaska ("RCA") began an investigation into their lawfulness. The RCA eventually suspended not only the 1997 rates, but also the rates for the next three years, preventing them from becoming final and effective. In the interim period before final intrastate tariff rates were approved, the RCA permitted the TAPS carriers to collect temporary interim rates (equivalent to the carriers' proposed rates for the years in question), subject to their being refunded in the event that the interim rates exceeded the final rates established by the RCA. *Id.* Thus, during the interim period BP calculated prices charged to Petro Star under the BP-Petro Star contracts by applying the temporary interim rates charged by the TAPS carriers. *Id.* ¶ 24.

The RCA completed its investigation in November 2002, and issued Order No. 151 in Docket P-97-4, determining that the proposed rates were not fair and reasonable. The RCA established substantially lower rates and ordered refunds of the difference between the final, lawful rates it set and the unlawful charges the TAPS carriers had collected on an interim basis. *Id.* ¶ 25. The TAPS carriers appealed, but on February 15, 2008, the Alaska Supreme Court upheld the RCA order in full. *Id.* ¶ 26. Since then, BP has received nearly $32 million in refunds and interest from the TAPS carriers. Declaration of Genevieve Vose ("Vose Decl.") Ex. 1 at 11-13. BP has refused, however, to pass these refunds through to Petro Star, even though BP overcharged Petro Star based on the interim (and unlawful) TAPS tariff rates.

On April 4, 2011, Petro Star filed this lawsuit, alleging breach of contract, unjust enrichment and reformation, and requesting as damages the overcharges it paid when it purchased crude oil from BP based on the interim, unlawful TAPS tariff rates.
PETRO STAR'S MOTION TO COMPEL                                      Page 3 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 4 of 16

On October 21, 2011, Petro Star served its First Set of Interrogatories and First Set of Requests for Production on BP. Vose Decl. Exs. 2-3. BP requested, and Petro Star granted, an extension of BP's time to reply, and BP served its written responses on December 9, 2011. Vose Decl. Exs. 1, 4. Counsel for the parties conducted a first meet and confer over the inadequacy of BP's responses on December 19, 2011, and have had additional conversations on December 23 and December 29, 2011, and January 10 and January 13, 2012. Vose Decl. ¶ 2. During each conference, counsel for Petro Star has reiterated the necessity of swift action given the short time for expert reports and discovery in the present matter and has requested a firm time frame in which BP would agree to supplement its interrogatory responses and begin producing documents responsive to the requests for production. *Id.* ¶ 3. As of the date this motion is being filed, however, BP had not yet begun to produce documents responsive to Petro Star's Requests for Production. *Id.* ¶ 4. Further, while BP tentatively agreed to supplement some of its responses to Petro Star's Interrogatories, it has not yet served those supplemental responses, nor has it provided any firm time frame for doing so. *Id.* ¶ 4.

Since BP had failed to provide important discovery that is relevant to expert reports, it became clear that the previous deadline of January 27, 2012, for opening expert reports necessarily could not be met. Accordingly, on January 12, 2012, the parties jointly moved for an extension of time for initial and rebuttal expert reports, and the Court granted that motion. Dkt. Nos. 41 & 42. Nevertheless, the new, February 28, 2012 deadline for opening expert reports remains close on the horizon, and the April 6, 2012 deadline for completion of all discovery is less than three months away. Because BP has failed even to commit to a date by which it will provide full and complete responses to Petro Star's Interrogatories or produce documents

PETRO STAR'S MOTION TO COMPEL                                                  Page 4 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 5 of 16

responsive to Petro Star's Requests for Production, Petro Star has little choice but to seek an order of the Court compelling BP to produce the requested discovery.

### III. Relief Requested

Petro Star requests an order overruling BP's objections, discussed below, and compelling BP to serve supplemental responses to Petro Star's First Set of Interrogatories within one week of the Court's Order, including Interrogatories No. 2, 5, 6, and 7. Petro Star further requests an order compelling BP to produce documents responsive to Petro Star's Requests for Production No. 4, 6, 13-17, no later than one week after the Court issues its Order.

### IV. Standard

The scope of discovery is set out in Federal Rule of Civil Procedure 26: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The Ninth Circuit has affirmed that broad scope:

> We start with the premise that pre-trial discovery is ordinarily accorded a broad and liberal treatment. If no claim of privilege applies, a non-party can be compelled to produce evidence regarding any matter relevant to the subject matter involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence. This broad right of discovery is based on the general principle that litigants have a right to every man's evidence, and that wide access to relevant facts serves the integrity and fairness of the judicial process.

*Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). That Court has also held that "wide access to relevant facts serve the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Petro Star moves to compel disclosure of relevant evidence in response to its First Set of Interrogatories and First Set of Requests for Production.

PETRO STAR'S MOTION TO COMPEL                                                   Page 5 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 6 of 16

## V. Argument

In the present motion, Petro Star seeks an order compelling full and complete interrogatory responses, as well as documents, relating to contracts that are comparable to the ones at issue in the present suit, intra-company tariff refunds, and extrinsic evidence as to the defense it has asserted of assignment/novation. As outlined below, this is highly relevant discovery, and even when asserting burden, BP has been unable to provide basic facts to establish it. BP should be compelled to provide it.

### A. BP Should Provide Full and Complete Responses And Responsive Documents As To Comparable Contracts.

BP has not fully responded to discovery seeking information and documents related to BP's other contracts for the sale, exchange, or delivery of ANS crude oil. Petro Star has propounded the following two interrogatories on this topic:

> **INTERROGATORY NO. 2:**
> Identify (a) all contracts to which BP is or was a party for the sale, purchase and/or exchange of ANS oil involving delivery to any point within the State of Alaska and in effect at any time since 1990, and (b) any such contracts that utilize a pricing formula involving a published pipeline tariff.
>
> **INTERROGATORY NO. 7:**
> Identify all contracts to which BP is or was a party for the sale, purchase or exchange of ANS oil involving delivery to any point within the "Lower 48" states, including the Gulf of Mexico, and in effect at any time since 1990, that utilize a pricing formula involving a published pipeline tariff.

Vose Decl. Ex. 1 at 8, 16.[1] As is apparent from the form of these interrogatories, Petro Star seeks evidence as to other contracts to which BP is a party which may contain pricing terms

---

[1] This argument, and any resulting order, also should extend to Request for Production No. 2, which calls for BP to produce "All documents constituting or relating to any contract to which BP is or was a party that relates to the sale, purchase, exchange and/or delivery of ANS oil to any point within Alaska, with the exception of exchanges at the Valdez Marine Terminal." Vose Decl. Ex. 4 at 7-8.

PETRO STAR'S MOTION TO COMPEL  Page 6 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 7 of 16

similar to the one in the BP-Petro Star contracts that are the subject of this suit. Whether BP is a party to contracts that are comparable to the ones at issue in this suit, and BP's treatment, interpretation, and performance of such contracts, is unquestionably relevant to the meaning of the BP-Petro Star contracts and the issues in the present litigation.

Despite this unquestionable relevance, BP's responses to these interrogatories have been wholly inadequate. In response to Interrogatory No. 2, BP identified the BP-Petro Star contracts and two contracts with Williams Energy Marketing & Trading Company. Vose Decl. Ex. 1 at 12-13. While this answer would be fair if these were the only responsive contracts, conferences with BP counsel have made clear that there may be other responsive contracts that have not been identified in response to this interrogatory. Vose Decl. ¶ 5. Indeed, during the most recent teleconference between counsel for BP and counsel for Petro Star, BP counsel revealed that they had not even determined how many additional contracts might be responsive to this request. *Id.* BP counsel also refused to provide a deadline by which Petro Star could expect a supplemental response that fully and completely provides the requested information. *Id.* ¶ 4.

Interrogatory No. 7 seeks similar information about BP contracts comparable to those at issue in the present case, but this interrogatory seeks information about contracts that involve delivery of oil outside of Alaska, in the "Lower 48" states. BP has not provided any substantive response to this interrogatory. Instead it has rested on its objections that the requested information is not relevant, would be privileged, is already in the possession of Petro Star, and that the request is overly broad and vague.[2]  Vose Decl. Ex. 1 at 16-17.

---

[2] BP has taken this position though Petro Star has limited the scope of Interrogatory No. 7 to contracts that utilize a pricing formula involving a published pipeline tariff. Petro Star is willing to live by that limitation as part of any compulsion order issued by the Court.

PETRO STAR'S MOTION TO COMPEL                                                                           Page 7 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 8 of 16

These objections are without basis. In conferences, BP counsel has made it clear that its key objections are to the relevance of the requested information and the burden of collecting it. Vose Decl. ¶ 6. As with Interrogatory No. 2, Petro Star seeks information relating to potentially comparable contracts in an attempt to elicit information as to how BP interpreted and performed contracts like the BP-Petro Star contracts with pricing terms that incorporate tariff rates subject to retroactive adjustments. This type of evidence goes to the heart of this dispute and is indisputably relevant. Nor is the request unduly burdensome. Petro Star believes that the number of contracts encompassed by this request is fairly low. Accordingly, although Petro Star considered whether this request could be further narrowed, by timeframe or otherwise, it could not determine an appropriate way to narrow the request other than by the limitation that is already contained within it – to contracts with a pricing term that is analogous to the one at issue here. In any event, BP has not been able to provide even an estimate of how many contracts might be responsive, Vose Decl. ¶ 6, so it appears that BP's objection as to burden was made without sufficient investigation into its basis. At the time of filing, BP had tentatively agreed to produce the requested contracts, but without any deadline or time frame in which it would do so. *Id.* ¶ 6.

### B. BP Has Wrongfully Withheld Evidence of Intra-company Transfers.

BP has disclosed that it received nearly $32 million in refunds resulting from the rate challenge. Vose Decl. Ex. 1 at 13. Petro Star has requested information about how BP handled those tariff refunds in the following interrogatory:

> **INTERROGATORY NO. 5:**
> Describe all payments, including interest, made by BP to any person and related to tariff refunds or adjustments and related interest received by BP that arose out

PETRO STAR'S MOTION TO COMPEL  Page 8 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 9 of 16

of, resulted from, or relate to RCA Order No. 151 or RCA Order No. 162 in Docket P-97-4, and in your description identify the persons to whom BP made such payments.

*Id.* Whether BP passed along those refunds to any other customer or third party, whether or not pursuant to contractual language, is relevant to the practice and understanding in the industry and the meaning of the disputed contractual provisions here. But BP has not provided a full and complete response to this interrogatory. Instead, after stating numerous objections, BP has elusively stated: "On May 16, 2008, BP Oil Supply paid *another BP entity* the full amount of the refunds and interest listed in BP Products's response to Petro Star's Interrogatory No. 4 above." *Id.* at 14 (emphasis added). This does not sufficiently identify the BP entity that was the recipient of the refunds passed along to BP.

After more than a month conferring about this inadequate response, BP still has not identified the other BP entity. BP's position has been that intra-company transfers should not be relevant but has not explained why such transfers would be any less relevant than transfers outside of the company. Petro Star requires this information in order to understand the circumstances and any contractual provisions that may be relevant to this transfer of funds, and in order to follow up on whether the refunds were passed along further from the unidentified BP entity to any other party.

Similarly, Petro Star has sought information about instances in which BP has provided payments to others stemming from retroactive tariff adjustments or refunds in this interrogatory:

> **INTERROGATORY NO. 6:**
> Describe all instances in which BP has provided a payment to another person related to a retroactive tariff adjustment or refund, including the amounts of such payments and the dates on which BP provided them, and in your description identify (a) the person to whom BP provided such payment, (b) the contracts

PETRO STAR'S MOTION TO COMPEL  Page 9 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 10 of 16

between BP and the person to whom payment was made that were in effect during any time period to which the retroactive tariff adjustment or refund applied; and (c) the dates on which the retroactive tariff adjustments or refunds were finalized or paid.

Vose Decl. Ex. 1 at 14. After asserting numerous objections, BP responded only as follows: "BP Oil Supply has not paid tariff refunds, or interest on tariff refunds, to any entity *that is not another BP entity*." *Id.* at 15 (emphasis added). This is not a full or complete answer to this interrogatory, which requests a description of any such instances, including the amounts of the payments, the dates on which they were provided, the person to whom they were provided, and any contractual language governing the refund. Whether BP has paid refunds resulting from retroactive tariff adjustments, and whether those refunds were passed along due to specific contractual language requiring that they be so, is relevant to the practice in the industry and the meaning of the disputed contractual provisions here. That is true whether the refunds were paid to some other BP entity or an unrelated third party. Again, BP's position has been that intra-company transfers should not be relevant, but it has not articulated any reason that this should be so. BP should be compelled to provide a full and complete response to this interrogatory.

Furthermore, BP has similarly stated that it will not produce documents relating to payments made between BP affiliates. For instance, Petro Star served the following request for production:

> **REQUEST FOR PRODUCTION NO. 4:**
> All documents relating to any payment, including related interest, made by BP to any person that was related to any tariff refund or adjustment and related interest paid to BP that arose out of, resulted from, or relate to RCA Order No. 151 or RCA Order No. 162 in Docket P-97-4.

PETRO STAR'S MOTION TO COMPEL                                          Page 10 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 11 of 16

Vose Decl. Ex. 4 at 10. BP agreed to produce only responsive documents "that concern or refer to any payment made by BP Oil Supply *to a non-BP entity*." *Id.* at 11 (emphasis added). This limitation is inappropriate, because there is no reason that payments between BP entities should be excluded from consideration. BP should be ordered to produce documents responsive to this request for production even if they relate to transfers between BP affiliates.[3]

### C. BP Has Refused To Provide Evidence Related To Its Affirmative Defense of Assignment.

BP has to date refused to produce documents relating to its affirmative defense that BP assigned the BP-Petro Star contracts to Phillips Petroleum Company ("Phillips"). Specifically, BP has alleged that Petro Star's claim is barred by the doctrine of novation, based on BP's assignment of the contracts at issue to Phillips in 2000. Answer to First Amended Complaint (Dkt. No. 3) at 7. Since the refunds Petro Star is seeking relate to ANS sold by BP to Petro Star prior to the assignment, however, the assignment does not affect BP's obligation to pass along the tariff refunds to Petro Star.

BP's defense hinges on two documents – an assignment between BP and Phillips and a letter between Petro Star and BP. Petro Star is seeking discovery on the context of these agreements or communications, which Petro Star believes will support its position that the assignment affected only obligations going forward, not obligations that had already been incurred. But, despite having placed the assignment at issue with its defense, BP has refused to

---

[3] This argument, and any resulting order, also should extend to Request for Production No. 6, which requests "All documents constituting or relating to any contract between BP and any person to whom BP has made any payment related to retroactive tariff adjustment or refund related to BP's sale, purchase, exchange and/or delivery of oil." Vose Decl. Ex. 4 at 13. To date BP has not produced or agreed to produce even the documents relating to the refund made to the unidentified BP entity discussed in its response to Interrogatory No. 5. *Id.* ¶ 7.

PETRO STAR'S MOTION TO COMPEL  Page 11 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 12 of 16

produce any documents relating to that assignment, other than the assignment and letter themselves. Petro Star has served the following request for production on this subject:

> **REQUEST FOR PRODUCTION NO. 13:**
> All documents supporting, contradicting, or relating to BP's allegation that BP assigned the BP-Petro Star contracts to Phillips Petroleum Company.

Vose Decl. Ex. 4 at 22. In response, BP has agreed to produce only "all non-privileged documents, in the files that existed in BP Oil Supply (as of the BP Oil Supply / BP Products merger on January 1, 2011) and were transferred to BP Products, *that constitute the May 12, 2000 novation letter agreement between BP Oil Supply, Petro Star, and Phillips Petroleum Company or that concern or refer to that letter agreement.*" *Id.* at 23. BP lodged a similar response to four other requests for production seeking documents relating to BP's defense, Requests for Production Nos. 14, 15, 16, and 17. *Id.* at 23-28. In other words, BP has refused to produce any documents relating to the assignment between BP and Phillips other than the assignment and letter themselves.[4]

BP's position is inexcusable. Alaska law contemplates the consideration of extrinsic evidence when interpreting contracts, *even if the agreement is not ambiguous*. *Alyeska Pipeline Service Company v. O'Kelley*, 645 P.2d 767, 774 n.1 (Alaska 1982). The standard for seeking discovery of such extrinsic evidence, of course, is even lower – Rule 26 permits discovery even of inadmissible evidence so long as it is reasonably tailored to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Having put the BP/Phillips assignment and Petro Star's alleged consent at issue with its defense, BP cannot deny Petro Star discovery into evidence that

---

[4] Indeed, BP has refused to produce even the communications reflecting negotiations between BP and Phillips, *i.e.*, the most obvious extrinsic evidence of the meaning of the assignment.

PETRO STAR'S MOTION TO COMPEL Page 12 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

relates to the meaning of the assignment, including correspondence among BP, Phillips and Petro Star.[5]

## VI. Conclusion

For the foregoing reasons, Petro Star respectfully requests that the Court issue an Order compelling BP to respond to Petro Star's First Set of Interrogatories and First Set of Requests for Production as follows:

- BP must serve full and complete supplemental responses to Interrogatories Nos. 2, 5, 6, and 7 no later than one week after the issuance of the Order; and

- BP must produce all documents responsive to Requests for Production Nos. 4, 6, and 13-17 no later than one week after the issuance of the Order.

---

[5] This argument, and any resulting order, also should extend to the following additional requests for production that request information relating to BP's assignment/novation defense: Requests for Production No. 14 ("All documents supporting, contradicting, or relating to BP's allegation that Petro Star provided consent to BP's alleged assignment of the BP-Petro Star contracts to Phillips Petroleum Company."); No. 15 ("All documents constituting or referring to the writing in which Petro Star allegedly discharged any and all duties owed by BP under the BP-Petro Star contracts."); No. 16 ("All documents supporting or contradicting (a) BP's allegation that Petro Star has transferred its entire interest in the BP-Petro Star contracts and (b) any allegation that BP has transferred its entire interest in the BP-Petro Star contracts."; and No. 17 ("All documents constituting or referring to any alleged release by Petro Star which allegedly bars Petro Star's claims.").

PETRO STAR'S MOTION TO COMPEL  Page 13 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 14 of 16

DATED this 20th day of January, 2012, at Seattle, Washington

        SUSMAN GODFREY L.L.P.
        Attorneys for Plaintiffs


        By: */s/ Floyd G. Short*
         Parker C. Folse, III (*pro hac vice*)
         Floyd G. Short (*pro hac vice*)
         1201 Third Avenue, Suite 3800
         Seattle, WA 98101
         Ph: (206) 373-7381
         Fax: (206) 516-3883
         fshort@susmangodfrey.com
         pfolse@SusmanGodfrey.com

         Michael Geraghty
         DeLisio Moran Geraghty & Zobel, P.C.
         943 W. 6th Avenue
         Anchorage, AK 99501
         Phone: (907) 279-9574
         Facsimile: (907) 276-4231
         E-mail: mgeraghty@dmgz.com
         Bar No. 7811097


This is to certify that a true copy of the foregoing was served electronically this 20th day of January, 2012, on:

Louis R. Veerman
E-mail: dveerman@guessrudd.com

Attorney for Defendant BP Products North America Inc., successor-in-interest to BP Oil Supply Company


By    */s/ Floyd G. Short*

PETRO STAR'S MOTION TO COMPEL      Page 14 of 15
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Case 3:11-cv-00064-RRB  Document 43  Filed 01/20/12  Page 15 of 16

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 37.1, the undersigned certifies that counsel for Petro Star have conferred on numerous occasions with counsel for BP concerning the issues in the foregoing motion. Because they are not located in the same city, counsel for Petro Star conferred telephonically with BP counsel on December 19, 2011, December 23, 2011, December 29, 2011, January 10, 2012, and January 13, 2012. Regrettably, these conferences failed to resolve the issues that are the subject of this motion. Counsel for Petro Star and BP continue to confer on other discovery-related issues in the hopes of resolving them without judicial intervention.

_____
Genevieve Vose

PETRO STAR'S MOTION TO COMPEL
Petro Star v. BP Oil Supply Co., et al.
Case No. 3:11-cv-00064 RRB
2136308v1/011100

Page 15 of 15

Case 3:11-cv-00064-RRB   Document 43   Filed 01/20/12   Page 16 of 16